Good afternoon, your honors. Can everybody hear me? Great, thank you. Good afternoon, and may it please the court. Brianna Mircheff on behalf of Eder Cortez-Zelaya. Your honors, I intend to reserve about five minutes of my time, and I will watch my own clock. Great. I want to start by briefly framing where we are in this case. This appeal represents the third iteration of one trial to come before this court. This court is twice vacated, counts one and two on behalf of Mr. Cortez-Zelaya's co-defendants. It's twice sent count one back for retrial, and it's twice ordered count two vacated for insufficiency. It's the government's position in this case that the same results should occur here as to Mr. Cortez-Zelaya. I don't plan to spend a lot of time on those claims in this argument today, because their fate is overdetermined. Not only is Mr. Cortez-Zelaya right on the merits of his claims, not only does the law of the case doctrine apply to require that the results be the same, but the government has confessed error as to those claims. So unless the court directs me otherwise, I plan to spend my time today on the Travel Act and on the- Well, yeah. I mean, the only question I have is what's actually being contested, because as you pointed out, the government's conceded a lot here, and so I'm not sure there was a whole lot that was actually contested. Maybe it is the Travel Act. So what's contested, as far as my position would be, but what's contested is the Travel Act counts and whether retrial would be required for the extrinsic effect of the cell phone in the jury room. So I'll start with the Travel Act counts. My conviction requires three things, a mailing, in furtherance of a business enterprise involving narcotics, and a subsequent overt act. Count five should be vacated as insufficient, because in this case, the government proved no overt act that followed the mailing that was charged in count five. The government's contrary argument relies on a few lines of a bank account statement that postdated the mailing. These were not transactions that were discussed at trial. The government put on no evidence in terms of what those transactions represented, nor did it endeavor to, or did actually establish that this bank account was solely put to the purposes of conspiracy business. Because that's the case, because the government proved no subsequent overt act that followed the December 20th mailing to Lawrence Concepcion, it's our position that count five should be vacated as legally insufficient for lack of an overt act. At different points in your papers, I thought that it looked like maybe you were asking for a retrial on count five, and at other times, maybe you're arguing that double jeopardy bars a retrial because there was insufficient evidence. Can you just clarify what your position is? Sure. So as to count five, our position is the evidence is legally insufficient. Now, in alternative, we are arguing that the jury instructions were grievously erroneous. When you say legally insufficient, are you trying to invoke double jeopardy? Indeed. I'm asking for a judgment of acquittal to be entered as to count five. We have made an alternative argument that even if the evidence were somehow barely sufficient on count five, the jury instructions went so far astray that a retrial would be required in any event because of the two errors in the instruction. And counsel... The cell phone issue would also result in a retrial on counts four and five, although the remand I think would have to be more limited. It would be a remand for an evidentiary hearing to decide what the impact of the... to nail down the exact nature of the extrinsic evidence and to decide whether it warranted a retrial. And counsel wants to count four and five just for clarity. You're contesting the sufficiency of the evidence as to count five, but not as to count four. That's correct, Your Honor. So for you to get the win you want... I mean, obviously, it would be great for you to have count five disappear. I understand why you'd want to do that, but you'd still be stuck with count four. So why don't we turn to the jury instructions for a moment? Because to me, for you to prevail, you want that clean sweep. You want to start there. Because you mentioned the phone would be another hearing, but for a clean sweep, it's instructions. So why don't we start there? So there's two errors with respect to the instructions. The first is the error in the failure to convey the requirement that the jury find an overt act that followed the mailing. So the jury instruction said, replace the overt act requirement with a statement that required the jury to find that Mr. Cortez-Eliot, quote, performed or attempt to perform conspiracy. It's our submission that that phrase does not require conduct. I mean, first of all, performing conspiracy borders on nonsensical. The extent that it has any meaning, it would be provided by the conspiracy instruction, which of course requires only an agreement and no conduct whatsoever. So it didn't convey that requirement that postdating the mailing that there'd be a subsequent overt act in furtherance of the business enterprise. That's one of our contentions with respect to the jury instruction. And counsel, if I could just jump in there. I've read this instruction a number of times, and I couldn't see anything in the record to explain how this happened. I mean, I was in AUSA once upon a time, and the jury instruction sometimes at the last minute, things are getting cut and pasted. Is this a cut and paste error here, what happened? Because it really doesn't make sense the way it reads. It doesn't make sense. I was not trial counsel below. I don't know what the nature of it was. It was submitted to the court, and the court signed off on it. We are on plain error because it was not objected to. But the indictment has the correct language in it. The indictment has language that requires an overt act. It's simply that the jury instruction has this phrase, perform conspiracy, that certainly whatever it means, it doesn't convey the requirement that there be an overt act that followed the mailing. And for that, I think there would need to be a retrial on the travel outcomes. And it also doesn't have, the other part of the instruction doesn't have the business enterprise language. It doesn't have the business enterprise language either, which of course requires a continuing course of conduct. And so really, the jury instruction here simply missed the mark. Compounding that error was the government's argument that said a mailing was sufficient as to counts four and five. That was in the closing testimony? That was in the closing argument. And there was no objection to that, so that's also on plain error. There was no objection to that, Your Honor, no. That's not really a separate, you're not really raising a prosecutorial misconduct argument though, right? It's not really a separate claim? I don't see it really as a separate claim. I think often jury instructions are deemed harmless because the closing argument cleaned them up. And here, the closing argument made the jury instruction far worse because it led the jury to believe that a mailing alone was going to be sufficient to convict on the Tribal Act count. But your point is just that that undermines the harmless, if there were a harmless argument, the closing statement undermines that on the jury instructions. I think that's right. I think that's right. I think it's, I wasn't making that clear. Yeah, I think the prosecutorial misconduct really simply aggravated the instructional error. If I could, I'd like to briefly address the cell phone issue. That too is yet another place where this trial kind of went off the rails. After carefully extracting only a few texts from the big fish's cell phone that would go back to the jury, the jury received the cell phone itself, which was not password protected, which still had a charge in it. And the jurors admitted that they, at least six of them admitted in these written answers that they had viewed what was on the cell phone. At that point, the court issued a curative instruction where this court's law would require that it nailed down exactly what the precise nature of the extrinsic evidence was so that it could decide whether a mistrial was warranted. And so we believe that that too was error that would warrant. You're not asking for a mistrial across the board because of that. You're just asking for an evidentiary hearing at this point. I think the law suggested the proper inquiry would be to send it back for an evidentiary hearing to nail down the extrinsic evidence. And unless it could be shown beyond a reasonable doubt that there was no reasonable likelihood that it affected even one juror's deliberation, then a mistrial would be... How easy is that going to be at this point? There's six jurors. I mean, do we know that it was only six jurors, or does that still need to be established? And can you find all those jurors still? So I think that is relatively well established. I do agree that there would be some... I mean, this trial was back in 2014, so it would be, I think, some difficulty. Of course, alternatively, the government could simply put on evidence of everything that was in the cell phone and say that there was nothing in the cell phone that would have possibly affected the verdict in the case. But don't we know that's not true? I mean, we already know from the evidence that did come in that that really couldn't be true, right? I mean, that will certainly be our position on that. But in terms of answering the question about how difficult it will be, I agree. It was a six years ago trial. It's a relatively smaller locale. I think finding it is different than finding jurors in Manhattan, perhaps. But still, if the government can't meet its burden on that, it would have to set the counts four and five for a new trial. Can I ask one other question? So the government conceded counts one and two, is that right? That's right. And then you're arguing on counts four and five. You haven't made an argument on count three, I take it, other than... Mr. Cortez. Sorry, Mr. Cortez is the one I wasn't charging count three. Okay, so this is the whole case. Okay, so if we rule with you on four and five, we don't need to reach any of the jury, or excuse me, any of the sentencing issues at all. That's correct. Or the cell phone issue, either. If there's a retrial on counts four, again, I'm asking for a judgment of acquittal on count five, but on the travel accounts, that would subsume the cell phone issue and all the sentencing issues. Okay. Do you want to reserve? I'd like to reserve, yes. Thank you. Counsel, you may proceed. Good morning and half a day, your honors. May it please the court, or good afternoon to you all. So as Ms. Merchuk did state, the government has conceded a number of issues in this case, and unless the court has specific questions for me as to the government's concessions, I will... Well, I do. The only question I have is on, you conceded one and two, so we're dealing with four and five. The cell phone issue, if we were to reach that, the government does concede that an evidentiary hearing is required or not? Your honor, if the court looks to the Montez case, cited in the government's opening brief, it talks about the fact that ordinarily an evidentiary hearing is required, although it is not an abuse of discretion not to hold one, and it turns on... That's sort of unique to the Ninth Circuit, right? I mean, I know we're bound by Ninth Circuit law, but that seems... I don't know if we've just tried to make it easier on the district court judges, but we seem to give them a lot of leeway on that. Most circuits require evidentiary hearings in situations like this. Well, your honor, I think that allowance of discretion to the district judges, what it comes down to is the fact that they're really limited in what information they can ascertain under federal rule of evidence 606B. They can only ascertain, did the jury receive extrinsic evidence? They can't then ask the jurors, what effects, if any, did this have on your deliberations, on your decision? And so the Ninth Circuit in Montez and other case law looks at, well, what difference would an evidentiary hearing have? In this case, the district court judge did not hold... Although the government did ask to actually bring the jurors in and question them individually. The district court did not hold what the Ninth Circuit contemplates as a formal evidentiary hearing, but what they did do was that they did a questionnaire with the jurors, and they asked them a number of questions. Did anyone turn on the phone? If yes, do you remember what you saw? Anything that you saw that you recall? Did you share whatever you saw? Do you know who you shared it with? Did anyone sitting next to you see it? And then when you look into the record, and this is in the excerpts of record at 1585 to about 1591, when they did actually question the jurors and receive their written answers, the jurors did write in what they saw. They sent texts and photos. One juror said that they actually saw a contact, Corinna C. And from that point, the court then had to decide what the appropriate remedy was. But no one said... None of those jurors in the questionnaires indicated... They said they saw texts, but they didn't say what information was on the text. They did not say what specific information was on the text. That's correct, Judge Nelson. But at this case as well, the court was in a position that... But a district court judge in an evidentiary hearing could ask that question, right? What information did you see, if they remember it six years later? If they remember six years from now, but at the end of the day, would that really have added that much more to the district court's fashioning of a remedy? This is not a case where this was discovered before the verdict. And in this case, the parties were in a position to determine a remedy before a verdict was even rendered. And the court decided to give a strongly worded instruction to the jury to disregard anything they saw on the phone. But in fact... I'm having trouble understanding how you think that that instruction was adequate in the absence of more information. Because if the judge had asked for more information and found out that the phone had lots of texts with Cortez Zelaya about drugs that they all looked at, then wouldn't you at least need a mistrial at that point? Or to reopen evidence or something? I mean, you couldn't just say, give an instruction and go on. Your Honor, the government's contention would be that that would be sufficient. And in fact, at that time, none of the trial counsel for any of the defendants asked for a mistrial. They all expressly endorsed the district court's chosen course of action. But how could that be right? I mean, if they saw very probative evidence on the phone that hadn't actually been admitted in evidence, I just don't understand how something that might be very persuasive to the jurors that wasn't really part of the trial wouldn't require a mistrial. Your Honor, the district court, and this is why we do evaluate their decision for abuse of discretion, the district court, we know that the district court, in fact, was the court that did limit which parts of that phone download were allowed to be submitted to the jury. The district court had the knowledge of what was on the phone that the jurors might have seen, and knowing that, chose to proceed in the manner it did. There was also a concern, again, that by questioning them further about it, the court did discuss, they were concerned about drawing too much attention to the issue. So they were trying, they were really having a balancing act here. They have a jury who's deliberating. This is not after the fact, as it was in Montez. This was during deliberations that they discovered this. And so the district court, in this case, was really engaging in a balancing act of trying to figure out what happens here, and what is the most appropriate way in this unique situation, where the jury is still deliberating, to remedy this situation. But counsel, do you agree, I mean, it's uncontested that extrinsic evidence was seen by the jurors, right? That is correct, Your Honor. OK, so once that happens, as I read Navarro-Garcia, the prosecution must show beyond a reasonable doubt that the extrinsic evidence did not affect the verdict. So you sort of seem to be suggesting that, well, we can just kind of look the other way, and if everybody agrees. I mean, the government has the burden here to show that that extrinsic evidence did not affect the verdict, beyond a reasonable doubt. So tell me how the government, without knowing what the extrinsic evidence is, can prove beyond a reasonable doubt that it didn't affect the verdict. Your Honor, Navarro-Garcia and Montez are cases that were in a distinctive posture, in that the extrinsic evidence was discovered after the verdict. There was no way to instruct the jury prior to the verdict, and jurors are presumed to follow the instructions they are given. So that's how you're distinguishing those cases? I mean, so your position is, this would be different if it were after the verdict, no instruction were able to, but we should carve out an exception to those cases by saying the instruction cured it. Yes, Your Honor, because in this case, it was just a factually distinguishable posture, and the court was actually in the position to fashion an appropriate remedy, and the district court, who had the benefit of knowing what was allowed in and what was allowed out, and evaluating the jurors' answers, should be given the discretion in trying to balance all of the issues there. The problem that I have with that, I mean, you're right that in certain circumstances, we allow instructions to cure additional evidence, but as far as I'm aware, that's always in the circumstance where the district court judge and the parties know exactly what evidence was presented to the jury, and that seems to be the problem here, is that there's just no knowledge of what that extrinsic evidence is, and so I'm not sure that the way you're trying to distinguish those cases actually works, because at the end of the day, we've got to be convinced, it seems to me, that beyond a reasonable doubt, that extrinsic evidence didn't affect them, and without knowing what it is, it's pretty hard to know whether the instruction just was a cure-all. Well, Your Honor, a couple of points in response to your question. The first part is that we're really looking at, did the district court judge abuse their discretion? The district court judge, and the record is silent as to exactly what was in that phone, but the district court judge did make a ruling pre-trial. We do know that only certain parts of that phone extraction were allowed into evidence, and so the district court judge was in the best position to evaluate what potentially... Can I ask you about that? So I understood that there was litigation over how many text messages would be admitted into evidence, but was there also litigation over the contacts on the phone and any voicemails? I didn't understand there to be... maybe I missed it, but I didn't see anything that showed that the district court knew everything that was on that phone. And Judge Friedland, your point is well taken. It was with regards to the text messages, but in this case, the district court was able to make that evaluation as to what the jury could potentially see, and again, this is a situation where the error is determined before the verdict, and the district court chose a course of action, and at the end of the day, even if we may disagree with their course of action, we're looking at whether or not they abused their discretion. Well, but what's wrong with the position that it's just abuse of discretion when you don't determine what the extrinsic evidence was? As a threshold matter, that's just... that's abuse of discretion. Maybe you have to hold an evidentiary hearing. Maybe you can do a questionnaire and ask follow-up questions, but if you don't figure out what the extrinsic evidence was that was seen, why isn't that just abuse of discretion? That's not just abuse of discretion, Your Honor, because this... with regards to this whole unique situation, again, it was discovered pre-verdict. These decisions were made with all counsel present, with all counsel being able to weigh into what the preferred course of action was. Or does the latest trial counsel expressly endorsed this chosen course of action? In fact, the trial judge asked, is this your preferred course of action? Or does the latest trial counsel say, yes? Government counsel deferred to defense counsel. Well, that means we need to review it for plain error, then. Yes, Your Honor. Can you take a moment and talk about the instructions? Because I think counsel is right that, opposing counsel is correct, that there are some pretty significant errors here. Yes, Your Honor. With regards to the jury instructions, the error here is in the manner in which the court defined the specific unlawful activity as required by the Travel Act. The jury instructions do say that, first, there was a use of the mail to facilitate some specified unlawful activity, and then after doing so, the defendant performed. Well, hold on a second. Actually, let's go to the instruction that was given. The word facilitate is not in that instruction. So we just need to be careful we're using the words that are actually in the instruction. So as I read it here, use the mail in interstate commerce with the intent to promote, manage, establish, or carry on with the conspiracy to distribute methamphetamine. Yes. You used the word facilitate as a colloquialism. Okay. Oh, yes, I did. And up to the point they, oh, I'm sorry, Your Honor. No, go ahead. And so that up to the point where it says, with the conspiracy to distribute methamphetamine tracks the model instruction. And then the second prong of that instruction, after doing so, the defendant performed. So, again, that also tracks the model instruction, and the language after doing so and performed, that's a word of action. It infers that something has to be done after the use of the mails. Now, the government concedes this is not an ideal choice of words, and this is not an ideal situation. This was not our finest day. We will concede that. But what we're looking at here is plain error and whether it affected substantial rights. Where's the mention of the business enterprise? And, Your Honor, that is the issue. That is the issue that the government would contend is the bigger problem with this jury instruction. It should have instructed on a business enterprise, but, Your Honor, that error should not require reversal under the plain error standard when we look to substantial rights. Because in Conti, when there is substantial evidence of an omitted element, the court also looks at whether that omitted element was contested at trial. In this case, the omitted element is that they did not instruct that they had to find a business enterprise. And, Your Honor, that element there was substantial evidence of at trial in that there were large-scale shipments of methamphetamine to Guam from Nevada from 2010 to 2013. There were large amounts of money being sent via Western Union and bank transfers to Cortez de Lea over that period of time. And, in fact, that element, the existence of a business enterprise was not contested. What was contested was whether or not Cortez de Lea played a role in that business enterprise. The defense here was knowledge and intent, not whether this activity itself was going on. That was conceded at trial. Right, but if the defendant's theory could have been, well, this was a one-off. This guy was a small player in this thing, and he just did it one time. If he did it one time, can you really say he was part of the business enterprise? Or at least, was the jury ever asked that question? Your Honor, that's not – and I see my time is expiring. May I briefly answer your question? Sure. Thank you, Your Honor. So the law doesn't require that they be a long-term participant in the business enterprise. It requires that the enterprise exist and they take actions in furtherance of that business enterprise. And so even if it was a one-off, his participation in that one-off is enough to convict under that statute. Unless the panel has any other questions, I am over my time. Okay, thank you very much, counsel. And opposing counsel, Ms. Merchef, you have 412. Go for it. Thank you, Your Honor. So first I want to address the cell phone issue. As Judge Nelson said, this has to be addressed on plain error. I would dispute that because the government didn't argue for plain error. And under McHenry, where the government doesn't make an argument that plain error should apply, the court does not save the government from its mistake. If it does not raise a defense that was available at the time of its answering brief, it's waived it. To Judge Freedman's point, yes, it's very clear that there was pre-trial litigation about that. I think it was actually mid-trial litigation about the text. There was no information about the pictures or the contacts or the e-mails or the missed phone calls or any of those things. That's exactly what I would say Montez requires this court to nail down as an evidentiary hearing, or would have required the district court to nail down. On the question of the jury instruction, the government, you know, addresses this one error about the business enterprise. I just want to be clear, there's two errors here, the business enterprise and the overt act requirement. The overt act requirement to me is the bigger one, and it's the one that's more clearly harmful. The business enterprise one, however, as Judge Owens, I think, was pointing out, although it doesn't require long-term participation, it does require intent to facilitate a continuing course of conduct. So if it was simply a one-off, you're there. I don't think that it would clearly meet the elements. Here, Mr. Quartz's defense was that, well, yes, he allowed his friend to use his bank account, and he mailed us one or two packages, but he didn't know what was in them. It's unclear, based on the error on count one, what the jury believed. Because of that omnibus count that included all of these different conspiracies, I don't think it can be said exactly what the jury believed Mr. Quartz's alliance did. And so for that reason, I would say the business enterprise error is not harmless. But again, the bigger problem is the overt act error, which is more clearly harmful in this case. I'm happy to address anything else that the court has, but I don't have anything else. I'm looking at my colleagues. I think we're all set. So I want to thank you very much, both counsel, for your arguments and your briefing today. Very helpful, very interesting case. I'll never think of an iPhone the same way after this file, to say that much. So this matter has been submitted. We'll now move on to the next case, Henry v. Adventist Health Care Medical Center.
judges: Owens, Friedland, Nelson